**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

IN RE:

                                                    Case No. 21-15037-PDR

ILAN BLOEMHOF,

                                                    Chapter 11

      Debtor-in-Possession.
_____/

<span style="color:darkred">**FIRST AMENDED**</span>
**CHAPTER 11 PLAN OF REORGANIZATION FOR ILAN BLOEMHOF**

~~January 4~~February 14, 2022

    The Debtor-In-Possession, Ilan Bloemhof, by and through undersigned counsel, and proposes this First Amended Chapter 11 Plan of Reorganization in accordance with the provisions of 11 U.S.C. §1123 of the United States Bankruptcy Code.

DEBTOR:                                    ATTORNEY FOR DEBTOR:

/s/ Ilan Bloemhof                          By:/s/ Chad Van Horn, Esq.
Ilan Bloemhof                                  Chad Van Horn, Esq.
                                               Florida Bar No. 64500
                                               Van Horn Law Group, P.A.
                                               500 N.E. 4th Street, Suite 200
                                               Fort Lauderdale, Florida 33301
                                               (954) 765-3166
                                               (954) 756-7103 (facsimile)
                                               Email: Chad@cvhlawgroup.com

# TABLE OF CONTENTS

Definitions ......................................................................................................................4

ARTICLE I – INTRODUCTION ......................................................................................7
    1.1 Debtor's Chapter 11 Case ......................................................................................7
    1.2 Summary of the Plan ..............................................................................................8

ARTICLE II – Classification and Treatment of Claims ....................................................10
    2.01    Unclassified Claims ..................................................................................10
            a.    Allowed Administrative Claims....................................................10
            b.    Priority Tax Claims .......................................................................11
            c.    United States Trustee Fees ............................................................12
    2.02    Classes of Secured Claims .......................................................................12
    2.03    Classes of Priority Unsecured Claims.......................................................15
    2.04    General Unsecured Claims ........................................................................15

ARTICLE III - DISTRIBUTIONS ....................................................................................16
    3.01    Method of Distribution Under the Plan .....................................................16
    3.02    No Distribution Pending Allowance...........................................................17
    3.03    Disallowed Claims ....................................................................................17
    3.04    Disbursing Agent ......................................................................................17
    3.05    No Recourse ..............................................................................................17
    3.06    Amendments to Claims .............................................................................18
    3.07    Post-petition Interest on Claims ................................................................18
    3.08    Unclaimed Funds ......................................................................................18

ARTICLE IV – Executory Contracts and Unexpired Leases .............................................18
    4.01    Assumption or Rejection of Executory Contracts and Unexpired Leases.............18

ARTICLE V- Provisions for Execution and Implementation of the Plan ...................................19
    5.01    General ......................................................................................................19
    5.02    The Reorganized Debtor ...........................................................................19
    5.03    Funding ....................................................................................................19
    5.04    Approval of Agreements ...........................................................................20
    5.05    No Change of Control ................................................................................20
    5.06    Administration After the Effective Date.....................................................20
    5.07    Term of Bankruptcy Injunction or Stays ...................................................20
    5.08    Re-vesting of Assets ..................................................................................20
    5.09    Discharge of Debtor ..................................................................................20
    5.10    Injunction Related to Discharge ................................................................21
    5.11    Injunction Against Interference with the Plan ...........................................21
    5.12    Votes Solicited in Good Faith....................................................................21
    5.13    Payments within 90 Day of Filing ............................................................22
    5.14    Notices ......................................................................................................22
    5.15    Reservation of Rights.................................................................................22

ARTICLE VI – Confirmation and Effectiveness of the Plan ...................................................22
    6.01     Conditions Precedent to Confirmation......................................................23
    6.02     Effect of Failure ................................................................................23
    6.03     Waiver of Conditions ...........................................................................23

ARTICLE VII – Retention of Jurisdiction..............................................................................24

ARTICLE VIII – Miscellaneous Provisions.............................................................................25
    8.01     Tax Implications of the Plan ...................................................................25
    8.02     Effectuating Documents and Further Transactions.................................26
    8.03     Post-Effective Date Fees and Expenses ...................................................26
    8.04     Amendment or Modification of Plan .......................................................26
    8.05     Severability ...........................................................................................26
    8.06     Filing of Additional Documents ............................................................27
    8.07     No Admissions.......................................................................................27
    8.08     Inconsistency.........................................................................................27
    8.09     No Interest or Attorneys' Fees ...............................................................27
    8.10     Successors and Assigns..........................................................................27
    8.11     Savings Clause .......................................................................................27
    8.12     Remedy of Defects.................................................................................27
    8.13     Future Cooperation ...............................................................................28

ARTICLE IX – Conclusion ......................................................................................................28

## **DEFINITIONS**

For the purpose of this First Amended Plan of Reorganization, the following terms shall have the respective meanings set forth below and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

**"Administrative Expense"** shall mean any cost or expense of administration of this Estate allowed by the Court pursuant to Section 503(b) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate and any actual and necessary expenses of operating the business of the Debtor.

**"Allowed Amount"** shall mean with respect to a Claim, (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules: (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order. In no event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest accrued on such Claim after the Filing Date.

**"Allowed Claims"** shall mean a claim (a) in respect of which a proof of claim has been filed with the Court within the applicable period of limitation fixed by Rule 3003 or (b) scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b), and which is not listed as disputed, contingent or unliquidated as to amount, and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3003, or by order of the court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. Allowed claim shall not include interest on the principal amount of such claim subsequent to the Petition Date, except as may be otherwise provided herein.

**"Allowed Secured Claim"** means an Allowed Claim secured by the Property in an amount equal to the lesser of the Allowed Claim of that creditor or the value of the Property, as determined by the Court pursuant to 11 U.S.C. § 506, minus the amount of any Allowed Claim secured by a senior lien against the same Property, unless the holder of the claim elects pursuant to § 1111(b) in which event the Allowed Secured Claim shall be equal to the Allowed Claim.

**"Article"** shall mean one of the numbered Articles of the Plan.

**"Ballot"** shall mean the ballot accompanying the Disclosure Statement upon which holders of Claims and Equity Interests in each Impaired Class of Claims and Equity Interests that are entitled

to vote on the Plan shall indicate their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon are to be indicated.

**"Ballot Deadline"** shall mean the last day established by order of the Court for filing a Ballot with the Clerk of the Court.

**"Bankruptcy Code"** means Title I of the Bankruptcy Reform Act of 1978, as Amended, 11 U.S.C. Section 101, et seq.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of Florida having jurisdiction over the Chapter 11 Case.

**"Business Day"** shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in Fort Lauderdale, Florida are authorized or required to close.

**"Case"** shall mean the Chapter 11 Case No. 21-15037-PDR, pending before the United States Bankruptcy Court for the Southern District of Florida, in which Ilan Bloemhof is the Debtor.

**"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

**"Claim"** shall have the meaning as set forth in 11 U.S.C., §101 and include any right to payment or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

**"Class"** shall mean a group of Claims or Equity Interests classified together pursuant to Article II of the Plan.

**"Confirmation Date"** shall mean the date upon which the Order confirming the Plan is entered by the Court in accordance with the provisions of Chapter 11 of the Code.

**"Court"** shall mean the United States Bankruptcy Court for the Southern District of Florida, in which the Debtor's Chapter 11 case, pursuant to which this Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

**"Creditor"** shall mean the holder of an allowed Claim.

**"Debtor"** shall mean Ilan Bloemhof.

**"Effective Date"** shall be the thirtieth (30th) day following the date upon which the Order is entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

**"Final Order"** shall mean an order or a judgment of the Court which has not been stayed and as to which order or judgment (or any revisions, modification or amendment thereof) the time to

appeal or seek review or rehearing has expired.

**"New Money"** shall mean new obligations over and above current payments.

**"Person"** or **"Persons"** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof or other entity.

**"Petition Date"** shall mean May 24, 2021, the date on which the Debtor filed his voluntary Chapter 11 Petition with the Court.

**"Plan"** shall mean this <u>First Amended</u> Chapter 11 Plan of Reorganization in its present form or as may hereafter be amended, modified or supplemented in accordance with the terms hereof or in accordance with the Code.

**"Pro Rata"** shall mean proportionately, so that the ratio of the amount of consideration distributed to an account of a particular Allowed Claim or Equity Interest to the Allowed Amount of such Claim or Equity Interest is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims or Allowed Equity Interests of the Class in which the particular Claim or Equity Interest is included to the amount of all Allowed Claims or Equity Interests of that Class, unless otherwise defined in the Plan. Whenever a Disputed Unsecured Claim or Disputed Equity Interest has not been finally resolved, an appropriate reserve for payment of such Disputed Unsecured Claim or Disputed Equity Interest shall be established so that there will be sufficient consideration available to make a Pro Rata distribution to the holder of such Disputed Unsecured Claim or Disputed Equity Interest upon final resolution of the dispute.

**"Professional Person"** mean attorneys, accountants, appraisers or other professionals within the meaning of Section 327 of the Bankruptcy Code, employed with the approval of the Bankruptcy Court.

**"Reorganized Debtor"** shall mean Ilan Bloemhof.

**"Rules"** shall mean the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules as adopted by the Court.

**"Secured Claim"** means any Claim that is secured pursuant to Section 506 of the Bankruptcy Code.

**"Secured Creditor"** means any Creditor that holds a Secured Claim.

# ARTICLE I
*Introduction*

## 1.01   Debtor's Chapter 11 Case

On May 24, 2021 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy, Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code"). Debtor had been a successful business owner. His companies, Tekno Plus Inc and Zebra Security provide security systems for adult entertainment clubs. Covid-19 greatly affected his business and, in turn, his personal income dropped from $97,000.00 in 2019 to $62,000.00 in 2020. In the first quarter of 2021, the two businesses had a combined net income of $22,000.00 which was an improvement from the last quarter of 2020. Business continues to grow and the Debtor believes he will meet or exceed his average personal income for 2019 and 2020.

Between May 2021, when the Debtor filed his petition, ~~and October~~through December 2021, the Debtor ~~netted an~~reflects a negative average of ~~$2,805.00~~$(306.86) per month. The Debtor's funding of proposed plan will require payments of $1,441.50/quarter or $480.50 per month. Included in ~~income,~~the negative average stated above are adequate protection payments to Wells Fargo and IBM. The Debtor will continue to make the adequate protection payments until such time as the Homestead property is sold which ~~would be available for Plan payments. More recent~~will pay Wells Fargo, IBM, and ~~realistic cash flow, for the last two months, September 2021 and October 2021, show an average monthly net of $8,712.00. Limiting the analysis of cash flow to September and October, it appears as though the average net income available each month for Plan payments will be $5,106.00. However, included in~~ the ~~obligations being paid by~~City of Fort Lauderdale in full. The Debtor ~~during~~believes that on the ~~administration~~Effective Date of the ~~estate (post-petition and pre-confirmation) are two monthly Adequate Protection payments totaling $3,606.00: Wells Fargo - $2,500.00 and IBM - $1,106.00. Adding the $3,606.00, plus $797.00 for the proposed increase in payments to IMB~~Plan, he will have sufficient income to ~~the $5,106.00 totals $9,509.00, which is the range of the amount needed for~~make the proposed ~~Plan.~~

~~The funding of the proposed Plan will require a~~ ~~monthly payment of approximately $9,509.00 for four years and then a reduction in monthly~~quarterly payments to ~~$8,878.29 for year five. (see MOR History & Projections, Exhibit "A".) Debtor anticipates having the ability to fund the Plan since his business is on the rise.~~ unsecured creditors.

The largest percentage of Debtor's debt is secured. A first mortgage, a judgment arising out of a defaulted second mortgage, and two liens held by the City of Fort Lauderdale for unresolved code violations total $883,632.60. The first mortgage on the Homestead property, located at 2456 Bayview Drive, Fort Lauderdale, FL has a current balance of $498,699.47 (POC #6-1) and is held by Wells Fargo Bank, N.A. (Class 1). Debtor is in arrears on the mortgage. The second mortgage was a HELOC. However, IBM Southeast Employees Credit Union (IBM) the holder of the second mortgage foreclosed, resulting in a Final Judgment of Foreclosure in the amount of $307,933.13 (POC #2). IBM's scheduling of a sale of the property forced Debtor to file in Chapter 11 the day before the sale.

~~The Debtor proposed to modify the existing conventional first mortgage on the property (Wells Fargo – Class 1) under the proposed Plan to keep the current fixed contract rate of 3.875% and to extend its term until 2062. This will change the monthly payment, including escrow, from a total of $4,760.68 to $4,988.65. Because the mortgage was recently written in 2017, and then modified in 2019, the new proposed modified mortgage has an increased balance from $443,169.35 to $498,699.47 (arrearage is included in the modified mortgage), the payment is greater than the current payment. However, the modification will bring the Debtor current on the mortgage (Class 1).~~

~~Debtor proposes to pay $307,933.13, plus interest, attorney fees and other costs accrued for a total of $326,923.35, to be amortized over twenty (20) years at an interest rate of 4.25% and a balloon payment on or before eighteen (18) months from the date of the Confirmation Order. Payment of principal and interest will be $2,024.42 per month (Class 2).~~

The third secured claim consists of two liens held by the City of Fort Lauderdale for unresolved code violations for an expired permit and for failure to cut weeds and clean up trash around the Debtor's homestead in 2019 when Debtor did alterations to the property. The current total is $77,000.00 ~~which will be paid back over 5 years with a statutory interest rate of 18%. This is a payment of $1,955.29 for 60 months (Class 3).~~(Class 3). However, the Debtor is currently negotiating with the City of Fort Lauderdale to reduce one lien (in the approximate amount of $52,000.00) and if reduced, will result in a lower payment to the City of Fort Lauderdale. The claim, once the final amount of the both liens is determined, will be paid in full at the time of closing on the sale of the Homestead (see next paragraph). The Debtor is currently working with the City of Fort Lauderdale to close out four (4) open permits and expects to have the matter resolved within the next 60 days.

An additional secured lien is held by Renew Financial Group, LLC as Agent for Florida Green Finance Authority pursuant to Pace Financing Agreement dated August 6, 2018, and recorded in the Broward County Records on August 8, 2018 (Instrument #115249869) (Class 4). The secured claim is in the current payment amount of $113,940.51. This is a "green" loan given to homeowners for improvements on their property and paid annually through the property taxes. The annual payment is in the approximate amount of $12,827.82.

The Debtor is entering into a Purchase and Sale Agreement to sell the Homestead with an anticipated closing in 90 – 120 days from the date of the filing of this Disclosure Statement, subject to certain permits being closed with the City of Fort Lauderdale. Debtor expects the permitting issues with the City of Fort Lauderdale will be resolved in the next 60 days. However, in an abundance of caution, the Debtor commits to selling the Homestead within six (6) months from the Effective Date of the Plan. WF, IBM, City of Fort Lauderdale, and Florida Green Finance Authority will be paid in full at closing as there is more than sufficient equity in the Homestead. In the event the sale of the Homestead does not occur, WF can initiate foreclosure proceedings and IBM can continue with its foreclosure proceedings without further order of this Court after six (6) months from the Effective Date. During this time period, the Debtor will continue to make adequate protections payments to WF and IBM as set forth in the respective Orders.

The claim of the IRS (POC #5-3) totals $6,602.55, consisting of a priority claim in the amount of $5,901.07 and a general unsecured claim in the amount of $701.48. The claim is for

1040 taxes for 2018 and 2019. The priority claim will be paid in equal monthly installments beginning on the Effective Date. The final installment will be payable not later than the sixtieth (60th) month following the Petition Date, together with statutory interest of 4%, (payable in arrears) on the unpaid portion from the Effective Date through the date of payment thereof.  Assuming a priority claim of $5,901.07, with (49) forty-nine months remaining in the allowed payback period (commencing April 2022), the monthly payment with an interest rate of 4% will be $132.92.

The general unsecured claim of $701.48 will be included in the treatment of unsecured creditors in Class ~~4~~5.

Class ~~4~~5 consists of all allowed general unsecured claims, totaling $~~576~~556,604.98. The ~~eighteen (18)~~ Class ~~4~~5 Creditors shall share pro rata in a total distribution of $~~28~~27,830.~~00~~25 (the "Plan Payments"), which shall be paid over ~~four (4~~five (5) years ~~commencing in Year 2~~ with ~~sixteen (16~~twenty (20) quarterly payments each in the amount of $1,~~801.88~~391.51.  The first payment will be made ~~one (1) year from~~on the Effective Date of the Plan and continuing on the first day of every quarter thereafter. The percentage of distribution is 5%. This Class is impaired.

The Special Class for the secured claim of IBM in the amount of $20,000.00 shall be paid in full at the closing on the sale of Debtor's Homestead.  This case is impaired

The administrative claim for legal fees of Van Horn Law Group are being paid by agreement at the rate of $500.00 per month ~~for two (2) years~~ with ~~payment~~the balance due in full ~~on or before two (2) years from the Effective Date~~upon the closing of the ~~Plan~~sale of Debtor's Homestead.

## 1.02    Summary of the Plan

Debtor's Plan of Reorganization contains one tax claim (IRS~~) and (4) four~~), five (5) classes of creditors~~.~~, and one (1) special class (IBM).  The classes of creditors and a summary of the treatment of those classes are detailed below.

**Claim of IRS:**  The claim of the IRS(POC-5-3) totals $6,602.55, consisting of a priority claim in the amount of $5,901.07, and a general unsecured claim in the amount of $701.48.  The claim is for 1040 taxes for 2018 and 2019. The priority claim will be paid in equal monthly installments beginning on the Effective Date. The final installment will be payable not later than the sixtieth (60th) month following the Petition Date, together with statutory interest of 4%, (payable in arrears) on the unpaid portion from the Effective Date through the date of payment thereof.  Assuming a priority claim of $5,901.07, with (49) forty-nine months remaining in the allowed payback period (commencing April 2022), the monthly payment with an interest rate of 4% will be $132.92.

The general unsecured claim of $701.48 will be included in the treatment of unsecured creditors in Class ~~4~~5.

**CLASS 1 – Wells Fargo Bank, N.A -1st Mortgage:** The secured claim of Wells Fargo Bank, N.A. ("WF") in the amount of $498,699.47 (POC #6-1) is impaired by the Plan. WF's claim

is secured by a first mortgage (with a term of 40 years from January 1, 2020, per modification in 2019) on Debtor's Homestead located at 2456 Bayview Drive, Fort Lauderdale, FL. ~~The current payment, including escrow is~~ **$4,760.68** ~~(P&I – $1817.87 and Escrow – $2,942.81). The mortgage is $83,093.49 in arrears as of May 4, 2021. The Debtor proposes a new modification of the existing mortgage by maintaining the current fixed contract rate of 3.875% and extending the current term from 2060 to 2062 and increasing the mortgage principal amount from $443,169.35 (the 2019 modification principal) to $498,699.47 (POC #6-1). As a result of the modification, the monthly payments of principal and interest will be $2,045.65, and including escrow of $2,942.81 the total payment is~~ **$4,988.65.** ~~Debtor shall escrow with WF amounts required for the maintenance of real estate taxes and insurance premiums.~~ The Debtor is currently making adequate protection payments to WF in the amount of $2,500.00 per month per Order entered at DE 37.  The Debtor is entering into a Purchase and Sale Agreement to sell the Homestead with an anticipated closing in 90 – 120 days subject to certain permits being closed with the City of Fort Lauderdale.  Debtor expects the permitting issues with the City of Fort Lauderdale will be resolved in the next 60 days.  However, in an abundance of caution, the Debtor commits to selling the Homestead within six (6) months from the Effective Date of the Plan.  WF will be paid in full at closing as there is more than sufficient equity in the Homestead.  In the event the sale of the Homestead does not occur, WF can initiate foreclosure proceedings without further order of this Court after six (6) months from the Effective Date.   Except as modified herein, all terms and conditions of the original Note and Mortgage shall remain in full force and effect.   Payments will be made to: Wells Fargo Bank, N.A., Attention Payment Processing, MAC#F2302-04C, 1 Home Campus, Des Moines, IA 50328. WF will retain its lien on the subject property until the amount due is paid.  This Class is impaired.

**CLASS 2 -  IBM Southeast Employees' Credit Union- 2nd Mortgage/ Judgment**: The secured claim of IBM Southeast Employees' Credit Union n/k/a iThink ("IBM") in the amount of $307,933.13 (POC #2-2) is impaired by the Plan.  Class 2 claims are secured by a judgment entered at CACE20004049 on April 16, 2021. ~~Originally, this claim was in the form of a HELOC, secured by a second mortgage on Debtor's real property located at: 2456 Bayview Drive, Fort Lauderdale, FL. Debtor defaulted and IBM/iThink foreclosed. The HELOC required payments of interest only. Debtor proposes to pay $307,933.13, plus interest, attorney fees and other costs accrued for a total of $326,923.35, to be amortized over twenty (20) years at an interest rate of 4.25% and a balloon payment on or before eighteen (18) months from the date of the Confirmation Order.  Payment of principal and interest will be $2,024.42 per month.~~ The Debtor is currently making adequate protection payments to IBM in the amount of $1,106.00 per month per Order entered at DE 35. The Debtor is entering into a Purchase and Sale Agreement to sell the Homestead with an anticipated closing in 90 – 120 days subject to certain permits being closed with the City of Fort Lauderdale.  Debtor expects the permitting issues with the City of Fort Lauderdale will be resolved in the next 60 days.  However, in an abundance of caution, the Debtor commits to selling the Homestead within six (6) months from the Effective Date of the Plan.  IBM will be paid in full at closing as there is more than sufficient equity in the Homestead.  In the event the sale of the Homestead does not occur, IBM can continue its foreclosure proceedings without further order of this Court after six (6) months from the Effective Date.   Payments will be made to; IBM Southeastern Employees Credit Union, 4450 24th Ave., Vero Beach, FL 32967. IBM will retain its lien on the subject property until the amount due is paid.  This Class is impaired.

**CLASS 3 – City of Fort Lauderdale:** The secured claim of the City of Fort Lauderdale,

Florida for $77,000.00 is due to unresolved code violations pertaining to an expired permit and the cutting down of weeds and removal of trash during a rehab/alteration of Debtor's homestead in 2018. These code violations are reflected in the liens recorded in the Official Records of Broward County Instrument Number 116810920 and the Official Records of Broward County Instrument Number 116288888. Debtor was unaware of the continuing "violation status" of his property, believing that his correction of the violations in 2018 cleared up the situation and stopped the "running of the daily meter of fines." Only upon the filing of his bankruptcy, did Debtor learn of the enormity of the liens. There are two outstanding cases: one with fines of $50 per day for 516 days and a second with fines of $200.00 per day for 256 days. at the time of filing. The Debtor is currently working with the City of Fort Lauderdale to reduce one of the fines (approximately $52,000.00 at the time of filing). The claim, once the final amount of the both liens is determined, will be paid over 60 months with a statutory interest ratein full at the time of 18%. This paymentclosing on the sale of the Homestead. The City of Fort Lauderdale will retain its liens on the subject property until the amount due is yetpaid. Payment in full includes any post-petition daily fines accrued. The Debtor is currently working with the City of Fort Lauderdale to be determined. close out four (4) open permits and expects to have the matter resolved within the next 60 days.

**CLASS 4 – Renew Financial Group, LLC as Agent for Florida Green Finance Authority**: The secured claim in the current payment amount of $113,940.51 is for Renew Financial Group, LLC as Agent for Florida Green Finance Authority ("Renew") pursuant to Pace Financing Agreement dated August 6, 2018, and recorded in the Broward County Records on August 8, 2018 (Instrument #115249869). This is a "green" loan given to homeowners for improvements on their property and paid annually through the property taxes. The annual payment is in the approximate amount of $12,827.82.

With the Debtor is entering into a Purchase and Sale Agreement to sell the Homestead with an anticipated closing in 90 – 120 days from the date of the filing of this Disclosure Statement. Renew will be paid in full at closing. This class is not impaired.

**CLASS 5 - General Unsecured Claims:** Class 45 consists of all allowed general unsecured claims, totaling $576556,604.98. The eighteen (18) Class 45 Creditors shall share pro rata in a total distribution of $2827,830.0025 (the "Plan Payments"), which shall be paid over four (4five (5) years commencing in Year 2 with sixteen (16in twenty (20) quarterly payments each in the amount of $1,801.88391.51. The first payment will be made one (1) year fromon the Effective Date of the Plan and continuing on the first day of every quarter thereafter. The percentage of distribution is 5%. This Class is impaired.

**SPECIAL CLASS – IBM Southeastern Employees Credit Union n/k/a iThink: This Special Class** consists of the claim of IBM Southeast Employees Credit Union (Proof of Claim #3-1) in the amount of $65,431.58 for an unsecured line of credit extended to the Debtor in October 2017. This line of credit was issued at the same time the Debtor received the secured HELOC from IBM reflected in Class 2 above. The Debtor defaulted on the loan and it was reduced to a Final Judgment on April 14, 2021. IBM and the Debtor agree that IBM may have certain actions against the Debtor for the line of credit which would except a portion of, if not all of the line of credit, from discharge. IBM has agreed to accept settlement of the claim for a one-time payment

of $20,000.00 to be paid in full at the closing on the sale of Debtor's Homestead.  This class is impaired.

## SUMMARY OF THE PLAN

Under the Plan the debtor has the following monthly obligations:

| Class/Claim | Creditor | Balance | Monthly Payment | Duration |
|---|---|---|---|---|
| | IRS | $5,901.07 | $132.92 | 49 months |
| 1 | Wells Fargo Bank | $498,699.47 | $~~4,988.65~~2,500.00 | ~~480 months~~Paid in full upon sale of property (to occur within 6 months of Effective Date). |
| 2 | IBM/iThink | $~~326,923.35~~307,933.13 | $~~2,024.42~~1,106.00 | ~~18 months~~Paid in full upon sale of property (to occur within 6 months of Effective Date). |
| 3 | City of Ft Lauderdale* | $77,000.00 | $~~1,955.29~~$-0- | ~~60 months~~Paid in full upon sale of property (to occur within 6 months of Effective Date). |
| 4 | Renew Financial Group LLC as Agent for Florida Green Finance Authority | $113,940.51 | $-0- | Paid in full upon sale of property (to occur within 6 months of Effective Date) |
| ~~4~~5 | General Unsecured** | $~~576,605~~556,604.98 | $~~450.47~~463.84 | ~~16~~Monthly ($1,391.51 over 20 quarters) |
| Special Class | IBM/iThink | ~~TOTAL~~$20,000.00 | $~~9,551.75~~$-0- | Paid in full upon sale of |

| | | | | property (to occur within 6 months of Effective Date). |
|---|---|---|---|---|

\*prior to any reduction agreed to with City of Fort Lauderdale, if any.

~~** commencing in Year 2 (one year from Effective Date of Plan)—amount show is monthly.~~

## ARTICLE II

*Classification and Treatment of Claims*

**2.01    Unclassified Claims**

### a.  Allowed Administrative Claims

Administrative expenses are costs or expenses of administering the Chapter 11 case which are allowed under 11 U.S.C. §507(a)(2). Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition, if any. All entities seeking an award by the Court of Professional Fees and Expenses shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date pursuant to section 330 if the Code and Rule 2016 by the date that is ten (10) days after the Effective Date or such other date as may be fixed by the Court.

Each holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release and discharge of such Allowed Administrative Claim, either (A) an amount equal to the unpaid amount of such Allowed Administrative Claim in cash commencing on the later of (i) the Effective Date, (ii) the date that such Claim becomes an Allowed Administrative Claim by a Final Order, or (iii) a date agreed to by the Claimholder and the Debtor; or (B) such other treatment (i) as may be agreed upon in writing by the Claimholder and the Debtor, or (ii) as the Bankruptcy Court has ordered or may order. Notwithstanding the foregoing, Allowed Administrative Claims representing (a) liabilities, accounts payable, or other Claims or obligations incurred in the ordinary course of business of the Debtor consistent with past practices subsequent to the Petition Date, shall be paid or performed by the Debtor in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements or contracts relating thereto; provided, notwithstanding any contract provision, applicable law or otherwise, that entitled a holder of an Allowed Administrative Claim to post-petition interest, no holder of an Allowed Administrative Claim shall receive post-petition interest, on account of such Claim.

~~Pursuant to Agreed Order (DE 117), the Debtor will pay over 60 months without interest, any Post-petition escrow advance made by USBNA/PNC. Creditor filed a Proof of Claim at POC 11 in the amount of $14,174.18 for escrow advances for taxes and insurance. Debtor disputes the amount of the claim and has filed an Objection at DE 130.~~

### b.  Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive, at the sole discretion of the Debtor, and in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (A) an amount equal to the unpaid amount of such Allowed Priority Tax Claim in cash commencing on the later of (i) the Effective Date, (ii) the date that such Claim becomes an Allowed Priority Tax Claim by a Final Order, or (iii) a date agreed to by the Claimholder and the Debtor; (B) as provided in section 1129(a)(9)(C) of the Bankruptcy Code, cash payments made in equal monthly installments beginning on the Effective Date, with the final installment payable not later than the sixtieth (60th) month following the Petition Date, together with interest (payable in arrears) on the unpaid portion thereof at 18% from the Effective Date through the date of payment thereof; or (C) such other treatment as to which the Debtor and such Claimholder shall have agreed in writing or the Bankruptcy Court has ordered or may order; provided, however, that the Debtor reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty; and, provided further, that no holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any pre-Effective Date interest accrued on or penalty arising before or after the Petition Date with respect to or in connection with such Allowed Priority Tax Claim.

### c. United States Trustee Fees

~~The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) within ten days of the entry of the confirmation order for pre-confirmation periods and simultaneously file with the Court the monthly operating reports for all pre-confirmation periods. Furthermore, Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods and simultaneously file with the Court quarterly post-confirmation reports until the earlier of an Order by this Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.~~

Until the Effective Date of a confirmed plan, the Debtor shall continue to file the UST Form 11-MOR, Monthly Operating Report and shall timely pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) (the "Quarterly Fees"). Within two business days of the Effective Date, the reorganized debtor and any other authorized parties who have been charged with administering the confirmed plan shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred. Following the Effective Date of the confirmed plan, the reorganized debtor and any other authorized parties who have been charged with administering the confirmed plan shall file the UST Form 11-PCR, Post-confirmation Report, every calendar quarter and shall timely pay the U.S. Trustee Quarterly Fees until the earlier of: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case.

The following chart lists the ~~Debtor's~~ estimated Administrative expenses and their proposed treatment under the Plan:

| TYPE | ESTIMATED AMOUNT | PROPOSED TREATMENT |
|------|------------------|--------------------|

| | **OWED** | |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | ~~Unknown~~$0.00 | ~~Paid in 60 equal monthly payments, with the first payment due 30 days after the Effective Date of the Plan.~~ The ~~Debtors have~~Debtor has been paying post-petition expenses in the normal course~~,~~ and ~~do~~does not believe that any amounts are due and owing. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0.00 | N/A |
| Professional Fees, as approved by the Court | Est. $30,000.00 | Legal fees are to be at the rate of $500.00 per month commencing on the Effective Date of the Plan with the balance due in full ~~on or before two (2) years from the Effective Date, or according to Court order if such fees have not been approved by the Court on the Effective Date of the Plan.~~ upon the closing of the sale of Debtor's Homestead. |
| Clerk's Office Fees | $0.00 | N/A |
| ~~Other Administrative Expenses~~ | ~~Est. $0.00~~ | ~~Paid in full on the Effective Date of the Plan, or according to a separate agreement, or according to Court order if such expenses have not been approved by the Court on the Effective Date of the Plan.~~ |
| Office of the U.S. Trustee Fees | Est. $250.00 | Paid in full on the Effective Date of the Plan. |
| **TOTAL** | **$30,250.00** | |

**2.02    Classes of Secured Claims**

Allowed Secured Claims are claims secured by property of the bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under 11 U.S.C. §506. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| CLASS 1 – Secured Claim of Wells Fargo Bank, N.A. (POC#6-1) in the amount of **$498,699.47** is impaired.<br><br>1st mortgage on real property located at: | **Impaired** | **Class 1** The secured claim of Wells Fargo Bank, N.A. in the amount of $498,699.47 (POC#6-1) is impaired by the Plan. WF's claim is secured by a first mortgage (with a term of 40 years from January 1, 2020 per modification in 2019) on Debtor's Homestead located at 2456 Bayview Drive, Fort |

| | | |
|---|---|---|
| 2456 Bayview ~~Dr,~~ Drive<br>Fort Lauderdale, FL<br><br>**<u>Existing Mortgage Terms:</u>**<br>Interest Rate: 3.875%<br>Maturity Date: 1/01/2060<br>Payment amount pursuant to 1st<br>Mod Mortgage Agreement:<br>  P&I   $1817.87<br>Escrow <u>$2942.81</u><br> Total Payment      $4,760.68<br><br>Arrearages: $83,093.49<br><br>~~**NEW MODIFIED MORTGAGE TERMS:**~~<br>~~Interest Rate:3.875%~~<br>~~Maturity Date: 1/1/2062~~<br>~~Payment amount Agreement~~<br>~~:          P&I   $2,045.65~~<br>~~          Escrow $2942.81~~<br>~~ Total Payment     $4,988.65~~<br><u>Debtor will continue to make adequate protection payments to Wells Fargo of $2,500.00/month.</u> | | Lauderdale, FL. The current payment, including escrow is **$4,760.68** (P&I - $1817.87 and Escrow - $2,942.81). The mortgage is $83,093.49 in arrears as of May 4, 2021. ~~The Debtor proposes a new modification of the existing mortgage by maintaining the current fixed contract rate of 3.875% and extending the current term from 2060 to 2062 and increasing the mortgage principal amount from $443,169.35(the 2019 modification principal) to $498,699.47(POC6-1). As a result of the modification, the monthly payments of principal and interest will be $2,045.65, and including escrow of $2,942.81 the total payment is $4,988.65. Debtor shall escrow with lender `amounts required for the maintenance of real estate taxes and insurance premiums.~~<br><br><u>The Debtor is entering into a Purchase and Sale Agreement to sell the Homestead with an anticipated closing in 90 – 120 days from the date of the filing of this Disclosure Statement, subject to certain permits being closed with the City of Fort Lauderdale. Debtor expects the permitting issues with the City of Fort Lauderdale will be resolved in the next 60 days. However, in an abundance of caution, the Debtor commits to selling the Homestead within six (6) months from the Effective Date of the Plan. WF will be paid in full at closing as there is more than sufficient equity in the Homestead. In the event the sale of the Homestead does not occur, WF can initiate foreclosure proceedings without further order of this Court after six (6) months from the Effective Date. During this time period, the Debtor will continue to make adequate protections payments as set forth in the respective Order.</u><br><br>Except as modified herein all terms and conditions of the original Note and Mortgage shall remain in full force and effect. Payments will be made to~~;~~<u>:</u> |

|  |  | Wells Fargo Bank, N.A. Attention Payment Processing, MAC#F2302-04C, 1 Home Campus, Des Moines, IA 50328 The Lender will retain its lien on the subject property until the amount due is paid. Payment in full is subject to a formal payoff to be provided by Lender prior to closing, and which will not be unreasonably withheld. Any funds received prior to closing will be applied contractually to payments due per the AP Order (DE 37). The Debtor shall be in default under this Plan if Debtor fails to make any adequate protection payment due on or before the 10th day of the month, and does not cure such default within five (5) days after Wells Fargo provides Debtor's counsel with written notice by email to chapter11@cvhlawgroup.com of the Debtor's failure to make the payment due (the "Default"). In the event of a Default, Wells Fargo shall file with the Court an Affidavit of Default and proposed order setting forth specific facts establishing that: (a) the Default occurred, (b) Wells Fargo provided the Debtor with written email notice of the Default; and (c) the Debtor failed to cure the default within the five (5) day cure period. Debtor shall have seventy-two (72) hours to file a response to the Affidavit of Default and if filed, this Court shall schedule the matter for hearing. If the Debtor does not file a response to the Affidavit of Default, Well Fargo may upload an order granting *in rem* relief from stay to exercise its rights with respect to the Homestead without further notice or hearing. |
|---|---|---|

| | | This class is impaired. |
|---|---|---|
| CLASS 2 – Secured Claim of IBM Southeast Employees in the amount of $307,933.13(POC 2-2) is impaired, ~~plus interest, attorneys fees and costs for a total of $326,923.35~~.<br><br>Was 2nd mortgage on real property located at 2456 Bayview Dr, Fort Lauderdale, FL to secure HELOC given on 10/31/17. HELOC required payments of interest only. Debtor defaulted; lender foreclosed; has judgment. ~~The Debtor proposes to pay the second mortgage on the property in the amount of $307,933.13, plus interest, attorney fees and other costs accrued, amortized over twenty (20) years at an interest rate of 4.25% and a balloon date of two (2) years from the date of the Confirmation Order. Payment of principal and interest will be $1,906.83 per month.~~<br><br>~~New Interest Rate: 4.25%~~<br>~~New Maturity Date: 18 months from date of Confirmation Order.~~<br><br>~~New Payment, includes principal: $2,024.42.~~<br><u>Debtor will continue to make adequate protection payments to IBM of $1,106.00/month.</u> | **Impaired** | Class 2 is the secured claim of IBM Southeast Employees' Credit Union n/k/a iThink, in the amount of $307,933.13 (POC #2-2) plus interest, attorney fees, and other costs ~~for a total of $326,923.35~~, and is impaired by the Plan.~~—~~ <u>.</u> Class 2 claims are secured by a judgment entered at CACE20004049 on April 16, 2021. This claim originally was in the form of a HELOC, secured by a second mortgage on Debtor's real property located at 2456 Bayview Drive, Fort Lauderdale, FL~~.~~ ~~Debtor defaulted and Creditor foreclosed. The HELOC required payments of interest only. Debtor proposes to pay $307,933.13, plus interest, attorney fees and other costs accrued for a total of $326,923.35, to be amortized over twenty (20) years at an interest rate of 4.25% and a balloon payment on or before eighteen (18) months from the date of the Confirmation Order. Payment of principal and interest will be $2,024.42 per month.~~ <u>(the "Homestead"). Debtor defaulted and Creditor foreclosed.</u><br><br><u>The Debtor is entering into a Purchase and Sale Agreement to sell the Homestead with an anticipated closing in 90 – 120 days from the date of the filing of this Disclosure Statement, subject to certain permits being closed with the City of Fort Lauderdale. Debtor expects the permitting issues with the City of Fort Lauderdale will be resolved in the next 60 days. However, in an abundance of caution, the Debtor commits to selling the Homestead within six (6) months from the Effective Date of the Plan. IBM will be paid in full at closing as there is more than sufficient equity in the Homestead. In the event the sale of the Homestead does not occur, IBM can continue foreclosure proceedings without further order of this Court after six (6) months from the Effective Date. During this time period, the Debtor will continue to make adequate protection payments as set forth in the respective Order.</u> |

Payments will be made to~~;~~ :
IBM Southeastern Employees Credit Union~~,~~
4450 24th ~~Ave.,~~ Avenue
Vero Beach, FL 32967~~.~~

The Lender ~~will~~ shall retain its lien on the ~~subject property~~ Homestead until the ~~total~~ amount due ~~is paid.~~ the Lender as of the closing date of the Homestead sale is paid in full. Payment in full includes payment of the bankruptcy claim amount of $307,933.13, post-petition accrued interest, NSF fees, and all post-petition state court and bankruptcy court attorney's fees and costs incurred by the Lender.

Payment in full is subject to a formal payoff to be provided by Lender prior to closing, and which will include, at minimum, payment of the bankruptcy claim amount, post-petition accrued interest, NSF fees, all post-petition state court and bankruptcy court attorney's fees and costs, and any and all other costs associated with the closing and as required under the Note and Mortgage. Any funds received prior to closing will be applied contractually to payments due per the AP Order (DE 35).

The Debtor shall be in default under this Plan if Debtor fails to make any adequate protection payment due on or before the 10th day of the month, and does not cure such default within five (5) days after IBM provides Debtor's counsel with written notice by email to chapter11@cvhlawgroup.com of the Debtor's failure to make the payment due (the "Default").

In the event of a Default, IBM shall file with the Court an Affidavit of Default and proposed order setting forth specific facts establishing that: (a) the Default occurred, (b) IBM provided the Debtor with written email notice of the Default; and (c) the Debtor failed

| | | |
|---|---|---|
| | | to cure the default within the five (5) day cure period.<br><br>Debtor shall have seventy-two (72) hours to file a response to the Affidavit of Default and if filed, this Court shall schedule the matter for hearing.<br><br>If the Debtor does not file a response to the Affidavit of Default, IBM may upload an order granting *in rem* relief from stay to exercise its rights with respect to the Homestead without further notice or hearing.<br><br>This ~~Class~~class is impaired. |
| CLASS 3 – Secured Claim of City of Fort Lauderdale<br><br>Amount of Claim:  $77,000.00<br><br>Payment:  In full upon the sale of the Homestead in an amount to be ~~determined~~determine pending ~~possible reduction in fines.~~<br><br>~~Payment Terms:  60 monthly payments with statutory interest at the rate of 18% commencing on the Effective Date~~resolution of ~~the Plan or upon the determination of the final amount due~~outstanding permits and ~~owing, whichever is later.~~fines. | Impaired | CLASS 3 is the secured claim of the City of Fort Lauderdale: The secured claim of the City of Fort Lauderdale, Florida for $77,000.00 is due to unresolved code violations pertaining an expired permit and to the cutting down of weeds and removal of trash during a rehab/alteration of Debtor's homestead in 2018.  Debtor was unaware of the continuing "violation status" of his property, believing that his correction of the violations in 2018 cleared up the situation and stopped the "running of the daily meter of fines." Only upon the filing of his bankruptcy, did Debtor learn of the enormity of the liens. There are two outstanding cases: one with fines of $50 per day for 516 days and a second with fines of $200.00 per day for 256 days~~.~~, at the time of filing.  The Debtor is currently working with the City of Fort Lauderdale to reduce one of the fines (approximately $52,000.00 at the time of filing).~~ The claim, once the final amount of both liens is determined, will be paid over 60 months with a statutory interest rate of 18%.  This payment amount is yet to be determined.~~<br><br>The Debtor is entering into a Purchase and Sale Agreement to sell the Homestead with an anticipated closing in 90 – 120 days from the date of the filing of this Disclosure Statement, |

| | | |
|---|---|---|
| | | subject to certain permits being closed with the City of Fort Lauderdale. Debtor expects the permitting issues with the City of Fort Lauderdale will be resolved in the next 60 days and upon the sale of the Homestead, the City of Fort Lauderdale will be paid in full. The City of Fort Lauderdale shall retain its liens (Broward County Official Records Instrument Number 116810920 and Broward County Official Record Instrument Number 116288888) on the subject property until the amount due is paid. Payment in full includes any post-petition daily fines accrued.<br><br>This class is impaired |
| Class 4 – Renew Financial Group, LLC as Agent for Florida Green Finance Authority – Pace Financing Agreement<br><br>Per Payoff Statement Dated January 20, 2022 – Amount Due: $113,940.51<br><br>Terms of payment: Paid in full upon sale of Homestead (subject to additional interest charges. | Unimpaired | Class 4 – is the secured claim of Renew Financial Group, LLC, as Agent for Florida Green Finance Authority ("Renew") pursuant to Pace Financing Agreement dated August 6, 2018, and recorded in the Broward County Records on August 8, 2018 (Instrument #115249869). This loan is currently paid annually through the Debtor's property taxes in the approximate amount of $12,827.82.<br><br>The Debtor is entering into a Purchase and Sale Agreement to sell the Homestead with an anticipated closing in 90 – 120 days from the date of the filing of this Disclosure Statement. Upon the sale of the Homestead, Florida Green Finance Authority will be paid in full.<br><br>Renew will retain its lien on the subject property until the amount due is paid.<br><br>Payment in full is subject to a formal payoff to be provided by Renew prior to closing, and which will not be unreasonably withheld. Any funds received prior to closing will be applied contractually to payments.<br><br>This class is not impaired. |

**2.03    Classes of Priority Unsecured Claims**

Certain priority claims that are referred to in 11 U.S.C. §§507(a)(1), (4), (5), (6) and (7) are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the Effective Date of the Plan equal to the Allowed amount of such claim.

| Class | Impairment | Treatment |
|---|---|---|
| Claim of Internal Revenue Service [Claim # 5-3] for 2018 and 2019 1040 taxes in total amount of $6,602.55, broken down as follows:<br><br>Secured Claim Amount: $0<br>Priority Claim amount: $5,901.07<br><br>General unsecured amount: $701.48 (Treated in Class ~~4~~5 Unsecured).<br><br>Assuming a priority claim of $5,901.07 and forty-nine (49) months at 4% months remain in the allowed payback period, the monthly payment will be $132.92. | Unimpaired | The claim of the IRS (POC 5-3) totals $6,602.55 and consists of a priority claim in the amount of $5,901.07, and a general unsecured claim in the amount of $701.48. The priority claim will be paid in equal monthly installments beginning on the Effective Date. The final installment will be payable not later than the sixtieth (60th) month following the Petition Date, together with statutory interest of 4%, (payable in arrears) on the unpaid portion from the Effective Date through the date of payment thereof.  Assuming a priority claim of $5,901.07 with (49) forty-nine months (beginning in January 2022) remaining in the allowed payback period, the monthly payment with an interest rate of 4% will be $132.92. |

**2.04    General Unsecured Claims**

General unsecured claims are not secured by property of the estate and are not entitled to priority under 11 U.S.C. §507(a). The following chart identifies the Plan's proposed treatment of Class 3, which contains general unsecured claims against the Debtor.

| Class | Impairment | Treatment |
|---|---|---|
| **Class ~~4~~5 - Allowed General Unsecured Creditors**<br><br>Total Allowed Claims $~~575~~556,604.98<br><br>Plan Payment Term:<br>~~Four (4~~Five (5) years (Quarterly) commencing ~~one year from~~on the Effective Date | Impaired | **Class ~~4~~5** - Consists of all allowed unsecured general claims, totaling $~~576,660~~556,604.98. There are eighteen members in this class. The Class ~~4~~5 Creditors shall share pro rata in a total distribution of $~~28~~27,830.~~00~~25 (the "Plan Payments"), which shall be paid over ~~four (4~~five (5) years commencing ~~in Year 2~~on the Effective Date of the Plan with ~~sixteen (16~~twenty (20) quarterly payments each in |

| | | |
|---|---|---|
| Total Plan Payments: $2827,830.0025 to be shared by all allowed unsecured claims.<br><br>Quarterly Plan Payment Amount: $1,801.88391.51<br><br>Percentage of Distribution: 5% | | the amount of $1,801.88.  The first payment will be made one (1) year from the Effective Date of the Plan391.51, and continuing on the first day of every quarter thereafter. The percentage of distribution is 5%.  This class is impaired.<br><br>Any allowed general unsecured claimant scheduled to receive a total distribution of $150.00 or less shall be paid in a lump sum on the first day of the month following the Effective Date. |

The Debtor's scheduled and unsecured claims are set forth either in Schedule F and/or in the Claims Register.  The aggregate amount of allowed claims included in Class 45 is $576556,604.98.  Based upon the total distribution amount of $28,830.00 he27,930.25, the allowed unsecured claimants will receive a distribution of approximately 5%.  The schedule of proposed payments to Class 45 – Unsecured Creditors is attached as Exhibit "B", Plan Payment Chart.

This distribution is higher than what allowed general unsecured claimants would receive in a hypothetical Chapter 7.

**NOTICE TO CLASS 45 - GENERAL UNSECURED CREDITORS:  Pursuant to 11 U.S.C. §1129(a)(15), unsecured creditors have a right to object to plan confirmation. If you object to confirmation of the Plan, the value of the property to be distributed under the Plan shall not be less than the projected disposable income of the Debtor as defined in 11 U.S.C. §1325(b)(2) to be received during the 5-year period beginning on the date that the first payment is due under the Plan (or during the period for which the Plan provides payments, whichever is longer).**

**2.05    Special Class**

| Special Class | Impairment | Treatment |
|---|---|---|
| Special Class - Claim of IBM Southeast Employees in the amount of $65,431.58 (POC 3-1). This class is impaired.<br><br>Claim Amount: $65,431.58<br><br>To Be Paid Per Agreement with IBM:  $20,000.00<br><br>Payment plan:  Paid in full upon the sale of Debtor's Property. | Impaired | IBM Southeast Employees Credit Union has filed a proof of claim (#3-1) in the amount of $65,431.58 for an unsecured line of credit extended to the Debtor in October 2017.  This line of credit was issued at the same time the Debtor received the secured HELOC from IBM reflected in Class 2 above. The Debtor defaulted on the loan and it was reduced to a Final Judgment on April 14, 2021.  IBM and the Debtor agree that IBM may have certain actions against the Debtor for the line |

| | | of credit which would except a portion of, if not all of the line of credit, from discharge.  IBM has agreed to accept settlement of the claim for a one-time payment of $20,000.00 to be paid in full at the closing on the sale of Debtor's Homestead. |
|---|---|---|

## ARTICLE III

### 3.01    Method of Distribution Under the Plan

(a) Subject to Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Reorganized Debtor to the holder of each Allowed Claim at the address of such holder as listed on the Schedules and/or Proof of Claim as of the distribution record date unless the Debtor or Reorganized Debtor has been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

(b)  Any payment of Cash made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)  Any distributions of Cash or other property pursuant to the Plan that is unclaimed for a period of 90 days after the distribution date shall constitute Unclaimed Funds and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

(e) Unless otherwise provided herein, all initial distributions and deliveries to be made on the Effective Date shall be made on the initial distribution date. Subsequent distributions shall be made in accordance with the terms set forth in the Plan.

### 3.02    No Distribution Pending Allowance

Notwithstanding any other provision of the Plan, if any portion of a Claim is disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim or Allowed Equity Interest (in whole or in part).

### 3.03    Disallowed Claims

All Claims held by Persons against whom the Debtor or Reorganized Debtor has commenced an Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims pursuant to section 502(d) of the Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed

shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Estates from such party have been paid.

### 3.04    Disbursing Agent

The Reorganized Debtor, or such Person(s) as the Reorganized Debtor may designate with approval of the Court, will act as disbursing agent under the Plan with respect to all Distributions to holders of Claims and Equity Interests, and will make all distributions required to be distributed under the applicable provisions of the Plan.

### 3.05    No Recourse

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agents, the Debtor, the Reorganized Debtor, or any of their respective professionals, consultants, or affiliates or respective successors or assigns, or any of the Debtor's respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code. **THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS**.

### 3.06    Amendments to Claims

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law. After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor, the Reorganized Debtor or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

### 3.07    Post-petition Interest on Claims

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, post-petition interest shall not accrue on or after the Petition Date on account of any Claim.

### 3.08    Unclaimed Funds

Upon return of any plan distribution, Debtor shall issue letter correspondence to the last known address indicated on Debtor's schedules or applicable proof of claim. Debtor's correspondence shall include a check for the applicable Plan Payment and provide all necessary case information to enable Creditor's determination of the applicability of Debtor's plan payment. Any payments made pursuant to Plan that are unclaimed for a period of six (6) months shall be forfeited by the holder and will be re-deposited in the Disbursing Agent's account in accordance with 11 U.S.C. §347(b).

## ARTICLE IV

*Executory Contracts and Unexpired Leases*

### 4.01    Assumption or Rejection of Executory Contracts and Unexpired Leases

The Plan provides that all executory contracts and unexpired leases to which the Debtor is a party will be assumed.  To the extent that any executory contract is not assumed, any claims arising thereunder will be deemed unsecured claims pursuant to Class 4, for purposes of treatment and distribution under the Plan. The deadline for filing a proof of claim based on a claim arising from the rejection of a lease or contract will be set by the Court at the Confirmation Hearing. Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**NOTICE TO PARTIES OF ALL EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO WHICH THE DEBTOR IS A PARTY: The Plan provides that all executory contracts and unexpired leases to which the Debtor is a party will be assumed. To the extent that any executory contract is not assumed and assigned, any claims arising thereunder will be deemed unsecured claims pursuant to Class 45, for purposes of treatment and distribution under the Plan.**

## ARTICLE V

*Provisions for Execution and Implementation of the Plan*

### 5.01    General

Upon confirmation of the Plan, and in accordance with the confirmation order, the Debtor or Reorganized Debtor, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan. In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

### 5.02    The Reorganized Debtor

Except as otherwise provided in the Plan and the Confirmation Order, on the Effective Date, Reorganized Debtor shall be vested with all of the property of the Estate free and clear of all

Claims, liens, encumbrances, charges, and other interests, including but not limited to that of holders of Claims and holders of Equity Interests. The Reorganized Debtor shall assume all of the Debtor's rights, obligations and liabilities under the Plan.

**5.03    Funding**

The funds to make the initial payments will come from the Debtor-in-Possession. Funds to be used to make cash payments pursuant to the Plan shall derive from Debtor's monthly income generated through several sources: increasing the rental income received from each of four units; increasing his income received working as a handyman and becoming an Uber driver.

To the extent that the Debtor wishes to prepay any amounts due under the Plan from exempt assets or other third-party sources, the Debtor reserves the right to do so without penalty and to seek the entry of a final decree closing this case. The Debtor, as reorganized, will retain and will be re-vested in all property of the Estate, excepting property which is to be sold or otherwise disposed of as provided herein, executory contracts which are rejected pursuant to the Plan and property transferred to Creditors of the Debtor pursuant to the expressed terms hereof. The retained property shall be used by the Debtor in the ordinary course of Debtor's personal affairs.

**5.04    Approval of Agreements**

Entry of the Confirmation Order shall constitute approval of the Plan Documents and all such transactions, subject to the occurrence of the Effective Date.

**5.05    No Change of Control**

Any acceleration, vesting or similar change of control rights of any Person or Entity in an arrangement with the Debtor that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

**5.06    Administration After the Effective Date**

After the Effective Date, the Reorganized Debtor may use, acquire, and dispose of the property, free of any restrictions of the Code and Rules.

**5.07    Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**5.08    Re-vesting of Assets**

Except as otherwise provided in the Plan, pursuant to section 1141 of the Code, the property of the Estate of the Debtor, shall revest in the Reorganized Debtor on the Effective Date, free and

clear of all Liens, Claims and interests of holders of Claims and Equity Interests, except as otherwise provided in the Plan or the Confirmation Order.

**5.09    Discharge of Debtor**

Debtor shall receive a discharge upon completion of all payments under the Plan or upon satisfaction of §1141(d)(5)(B), the Reorganized Debtor will be discharged, pursuant to section 1141(d)(1) of the Bankruptcy Code, from all Claims and debts that arose before the Effective Date of this Plan and from any liability of any kind whether or not: (a) a proof of Claim is filed or deemed to be filed under Section 501 of the Bankruptcy Code; (b) such Claim is allowed under section 502 of the Bankruptcy Code; or (c) the holder of such Claim has accepted the Plan, **PURSUANT TO 11 U.S.C. §1141(D)(5), DEBTOR WILL NOT RECEIVE A DISCHARGE UNTIL COMPLETION OF ALL PAYMENTS UNDER THE PLAN.**

On the Effective Date, all persons who have held, hold or may hold Claims against the Debtor, will be enjoined from taking any of the following actions or affecting the Reorganized Debtor, the Debtor's Estate, the assets or properties of the Reorganized Debtor, other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Reorganized Debtor; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Reorganized Debtor or the Debtor's Estate or the assets or properties of the Reorganized Debtor or the Debtor's Estate; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Reorganized Debtor or the Debtor's Estate or any direct or indirect successor-in-interest to the Reorganized Debtor, or any assets or properties of any such transferee or successor other than as contemplated by the Plan; (iv) asserting any set off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Reorganized Debtor or the Debtor's Estate or the assets or property of the Reorganized Debtor, or any direct or indirect transferee of any assets or property of, successor-in-interest to, the Reorganized Debtor; and (v) proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan.

**5.10    Injunction Related to Discharge**

Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against the Debtor, or Equity Interests in the Debtor, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor, on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest. Such

injunctions shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtor) and the respective properties and interests in property.

**5.11    Injunction Against Interference with the Plan**

No entity may commence or continue any action or proceeding, or perform any act whatsoever to interfere with the implementation and consummation of this Plan and the payments to be made hereunder, as long as said payments are made pursuant to the terms of the Plan. The Court retains jurisdiction to impose sanctions for any such interference, including but not limited to compensatory damages, attorney's fees and costs and, if appropriate, punitive damage.

**5.12    Votes Solicited in Good Faith**

The Debtor has, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

**5.13    Payments Within 90 Days of Filing**

All payments made within ninety (90) days prior to the Petition Date were made in the ordinary course. Therefore, it is not in the best interests of the creditors to pursue litigation relating to the transfers.

**5.14    Notices**

Any notice described in or required by the terms of this Plan or the Code and Rules shall be deemed to have been properly given when actually received or if mailed, five days after the day of mailing, if such shall have been sent by certified mail, return receipt requested, and if sent to:

The Reorganized Debtor addressed to:         **Ilan Bloemhof**
2456 Bayview Drive
Ft. Lauderdale, FL 33308

With copies to:                              **VAN HORN LAW GROUP, P.A.**
Attention: Chad T. Van Horn, Esq.
500 N.E. 4th Street, Suite 200
Fort Lauderdale, FL 33301

and                                          **Office of the U.S. Trustee**
51 SW First Avenue, Room 1204
Miami, FL 33130

**5.15     Reservation of Rights**

The Debtor reserve the right, after confirmation, to seek the closing of this bankruptcy proceeding prior to the entry of an Order of Discharge, upon the payment of the initial payments under this Plan, payment of all outstanding quarterly United States Trustee Fees, and the filing of any outstanding federal income tax returns. Such a request may be granted only upon notice and hearing, with the notice to all creditors and interested parties. If such request is granted, then upon the satisfaction of all payments required to be paid pursuant to the Plan to Classes 1 through 7 or five (5) years from the Effective Date, whichever is longer, the Debtor shall receive a discharge. **THIS PARAGRAPH ONLY PRESERVES THE DEBTOR'S RIGHT TO SEEK THE RELIEF DESCRIBED ABOVE AND DOES NOT CONCLUSIVELY GRANT SUCH RELIEF. CREDITORS' AND INTERESTED PARTIES' RIGHTS TO OBJECT TO SUCH RELIEF SHALL SIMILARLY BE PRESERVED UNTIL SUCH TIME AS IT IS REQUESTED BY THE DEBTOR AFTER CONFIRMATION.**

## ARTICLE VI

*Confirmation and Effectiveness of the Plan*

**6.01 __Conditions Precedent to Confirmation**

The Plan shall not be confirmed by the Court unless and until the following conditions shall have been satisfied or waived pursuant to Section 6.01 of the Plan:

(i)  The Confirmation Order shall be in form and substance reasonably acceptable to the Debtor and include, among other things, a finding of fact that the Debtor and the Reorganized Debtor, acted in good faith within the meaning of and with respect to all of the actions described in section 1125(e) of the Code and are, therefore, not liable for the violation of any applicable law, rule or regulation governing such actions; and

(ii)  All exhibits to the Plan, including those to be contained any Plan Supplement, shall be in form and substance reasonably acceptable to the Debtor and approved by the Court.

(iii)  The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(iv)  The statutory fees owing to the United States Trustee shall have been paid in full; and

(v)  All other actions, authorizations, filings consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtor and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

**6.02     Effect of Failure**

If each condition to the Effective Date specified in the Plan has not been satisfied or duly waived within ninety (90) days after the Confirmation Date, then upon the filing of a motion by the Debtor made before the time that all conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated, the Plan shall be deemed null and void in all respects, including without limitation the discharge of Claims pursuant to section 1141 of the Code and the assumptions or rejections of executory contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (l) constitute a waiver or release of any Action by, or Claims against, the Debtor or (2) prejudice in any manner the rights of the Debtor.

## 6.03    Waiver of Conditions

The Debtor may waive one or more of the conditions precedent to confirmation of the Plan, or the condition precedent to effectiveness of the Plan set forth in Section 6.01 of the Plan.  The Debtor may waive in writing one or more of the other conditions precedent to confirmation and effectiveness of the Plan, without further notice to parties in interest or the Court without a prior hearing.

## ARTICLE VII

### *Retention of Jurisdiction*

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

A.    To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting, therefrom;

B.    To determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

C.    To hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims or Claims;

D.    To ensure that Distribution to holders of Allowed Claims are accomplished as provided in the Plan;

E.    To enter and implement such order as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

F.    To issue such orders in aid of execution and consummation of the Plan, to the extent

authorized by section 1142 of the Code;

      G.     To consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan supplement, or any order of the Court, including, without limitation, the Confirmation Order;

      H.     To hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

      I.     To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

      J.     To recover all Assets of the Debtor and Property of the Estate, wherever located;

      K.     To determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

      L.     To enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

      M.     To take any action and issue such order as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

      N.     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtor for all taxable periods through the Effective Date for all taxable periods of the Debtor through the liquidation and dissolution of such entity);

      O.     To hear any other matter not inconsistent with the Code;

      P.     To adjudicate all Claims to any lien on any property of the Debtor or proceeds thereof;

      Q.     To determine the amount of any secured claim;

      R.     To deem satisfied and extinguished the mortgage lien of the Creditor in Class 1 of the Plan by entry of an order of the Bankruptcy Court in recordable form to be filed in the public records of Broward County Florida and

      S.     To enter a final decree closing the Case; provided however, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtor under applicable environmental laws.

T.      To retain jurisdiction over any foreclosure proceedings involving the Homestead Property to the extent of any federal questions, and the deadline for filing a removal action is extended for 10 day more than the period of time allotted for the claim in Class 1 to complete its foreclosure as to the Homestead Property.

## ARTICLE VIII

*Miscellaneous Provisions*

**8.01    Tax Implications of the Plan.**

The tax consequences of the implementation of the Plan to a specific creditor will depend on a number of factors, including whether the Creditor's Claim constitutes a "security" for federal income tax purposes, whether a Creditor has already taken a deduction of loss with respect to its Claim and the timing of any distributions under the Plan. It is possible that certain creditors will recognize gain or income as a result of distributions under the Plan. There also may be state, local or foreign tax considerations applicable to particular holders of Claims, none of which are discussed herein. Each holder of a Claim or any other party in interest in this case is strongly urged to consult with their tax advisor regarding the federal, state and local income and other tax consequences that the implementation of this Plan may have on them.

**8.02    Effectuating Documents and Further Transactions.**

The Debtor or Reorganized Debtor, as the case may be, is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

**8.03    Post-Effective Date Fees and Expenses**

From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of Professionals thereafter incurred by the Reorganized Debtor, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

**8.04    Amendment or Modification of Plan**

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Debtor shall have complied with section 1125 of the Code. The Plan may be altered, amended or modified by the Debtor at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications. A holder

of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. Prior to the Effective Date, the Debtor, and without the approval of the Bankruptcy Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interests of holders of Claims and Interests, may correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

**8.05    Severability**

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**8.06    Filing of Additional Documents**

On or before Substantial Consummation of the Plan, the Debtor shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**8.07    No Admissions**

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

**8.08    Inconsistency**

In the event of any inconsistency between the Plan and the Disclosure Statement, any Exhibit to the Plan or the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

**8.09    No Interest or Attorneys' Fees**

Except as otherwise provided under the Plan, or as ordered by the Court, no interest, penalty or other charge, including any late charge, arising from and after the Petition Date, and no award or reimbursement of any attorneys' fees or other related cost or disbursement, shall be allowed on, or in connection with, any Claim, unless otherwise provided under the Plan or awarded by the

Court.

**8.10    Successors and Assigns**

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

**8.11    Savings Clause**

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

**8.12    Remedy of Defects**

After the Effective Date, the Reorganized Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtor.

**8.13    Future Cooperation**

If any claimant, or its successor in interest fails and refuses to execute any document necessary to implement the terms of the Plan (including, but not limited to a release of lien or release of mortgage), such claimant shall be liable for attorney's fees and costs incurred in obtaining such documents or a substitute therefore.

**ARTICLE IX**
*Conclusion*

The aforementioned provisions shall constitute the Plan of Reorganization of the Debtor. This Plan, when confirmed will be deemed binding on the Debtor, the Reorganized Debtor, and all creditors and parties in interest.